**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KEITH R. P.,

                                     Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,
et al.,

                                  Defendants.

No. 5:24-CV-1489
(BKS/PJE)

---

**APPEARANCES:**                        **OF COUNSEL:**

Keith R. P.
Plaintiff pro se

Social Security Administration          KRISTINA D. COHN, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Keith R. P.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability insurance benefits ("DIB"). *See* Dkt. No. 1. Plaintiff moves for the Commissioner's decision to be vacated and remanded for

---

[1] This matter was referred to the undersigned for Report-Recommendation and in accordance with General Order 18 and N.D.N.Y. L.R. 72.3(e).
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

further proceedings. *See* Dkt. No. 7. The Commissioner moves for the decision to be affirmed. *See* Dkt. No. 15.[3] For the following reasons, it is recommended that plaintiff's cross-motion be denied, the Commissioner's cross-motion be granted, and the Commissioner's decision be affirmed.

## I.  **Background**

On May 18, 2022, plaintiff filed a Title II and Title XVIII applications for DIB, alleging a disability onset date of October 5, 2021. *See* T. at 215-24[4] (*See* Dkt. No. 12-5)[5]. On September 13, 2022, the Social Security Administration ("SSA") denied plaintiff's claims. *See id*. at 96-99 (*See* Dkt. No. 12-4). On November 8, 2022, plaintiff sought reconsideration, which the SSA denied on March 9, 2023. *See id.* at 105, 108-116 (*See* Dkt. No. 12-4). Plaintiff appealed and requested a hearing. *See id*. at 117-18 (*See* Dkt. No. 12-4). On November 8, 2023, a hearing was held before Administrative Law Judge ("ALJ") Robyn Hoffman. *See id*. at 39-66 (*See* Dkt. No. 12-2). On February 20, 2024, the ALJ issued an unfavorable decision. *See id*. at 14-38 (*See* Dkt. No. 12-2). On October 21, 2024, the Appeals Council affirmed the ALJ's determination and the decision became final. *See id*. at 1-6 (Dkt. No. 12-2). Plaintiff timely commenced this action on December 9, 2024. *See* Dkt. No. 1.

## II.  **Legal Standards**

### A.  **Standard of Review**

---

[3] This matter has been treated in accordance with General Order 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4] "T." followed by a number refers to the pages of the administrative transcript. *See* Dkt. No. 8. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page. Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program located at the header of each page.

[5] Due to the voluminous nature and many parts of the administrative transcript, in addition to the record citation, the undersigned will include the docket cite for factual citations.

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3))[6]; *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id*. (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotation marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such

---

[6] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

## B. **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience." *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)). "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (citing 42 U.S.C. § 423(d)(3)). "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'" *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

4

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)).  "The plaintiff bears the initial burden of proof to establish each of the first four steps."  *Id*. (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)).  "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere."  *Id*. (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

### III.  **The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff "has not engaged in substantial gainful activity since October 5, 2021, the alleged onset date."  T. at 20 (Dkt. No. 12-2).  At step two, the ALJ determined that plaintiff "has the following severe impairments: multiple sclerosis ["MS"], posttraumatic stress disorder

["PTSD"], generalized anxiety disorder ["GAD"], and alcohol use disorder." *Id*. (Dkt. No. 12-2).  At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. (Dkt. No. 12-2).

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> to perform a range of sedentary work . . . .  Specifically, the claimant can occasionally lift and carry ten pounds; frequently lift/carry less than ten pounds; sit for six hours; and stand and/or walk for two hours, all in an eight-hour workday with normal breaks.  He can occasionally climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; can perform occasional stooping, kneeling, crouching, and crawling; and can occasionally balance as that term is defined in the Dictionary of Occupational Titles (DOT) and the companion publication Selected Characteristics of Occupations (SCO).  The claimant retains the ability to: understand and follow simple instructions and directions; perform simple tasks independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; can handle simple, repetitive work-related stress in that the claimant can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that do not require the claimant to supervise nor manage the work of others; and should have occasional interaction with the public.

T. at 22 (Dkt. No. 12-2).[7]  The ALJ then proceeded to step five "of the sequential evaluation, based on the expedited process set forth in 20 CFR 404.1520(h)." *Id*. at 32 (Dkt. No. 12-2).  The ALJ explained that she "declined to make a finding as to whether

---

[7] Sedentary work is defined as

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a); 416.967(a).

6

the claimant can perform any past relevant work" because "[a]n actual determination of past relevant work will not have an effect on the legal outcome of this case." *Id*. (Dkt. No. 12-2). The ALJ noted that plaintiff "was born on March 7, 1985[,] and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date." *Id*. (Dkt. No. 12-2). At step five, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. (Dkt. No. 12-2). Ultimately, the ALJ concluded that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from October 5, 2021, through the date of this decision." *Id*. at 33. (Dkt. No. 12-2).

## IV. **Discussion**

### A. **The Parties' Arguments**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence for several reasons. Plaintiff argues that the ALJ failed to list several severe impairments, including a traumatic brain injury, cerebrospinal fluid ("CSF") pressure, traumatic spinal injuries, progressive multifocal leukoencephalopathy ("PMF"), meningitis, and long COVID. *See* Dkt. No. 7 at 4-5. Plaintiff asserts that the ALJ failed to properly consider the medical evidence, specifically, the medical records discussing the severity of his MS. *See id*. at 5-6. Plaintiff claims that all his impairments have similar symptoms, cause similar limitations, and overlap with one another. *See id*. at 6. Plaintiff also claims that he does not suffer from alcohol use disorder. *See id*. at 5.

He asserts that the consultative medical experts' opinions in Exhibits 10F and 11F are the most accurate descriptions of his physical limitations because "no other [doctor]

7

had thoroughly evaluated his medical symptoms." Dkt. No. 7 at 5.  Contradictorily, plaintiff argues that none of his medical providers or the state consultative medical experts properly evaluated his symptoms and conditions.  *See id*. at 3-4.  He states that he has additional medical evidence to submit in support of his claims.  *See id*. at 10.

Similarly, plaintiff argues that the ALJ "failed to properly incorporate [the] restrictions reported" by the consultative medical experts in Exhibits 10F and 11F, and the ALJ's RFC determination does not fully consider his pain and limitations.  *Id*. at 4.  Plaintiff contends that he cannot perform any of the mental or physical tasks listed as part of his RFC and he lacks the ability to perform sedentary work.  *See id*. at 7-9.  Finally, plaintiff disagrees with Dr. Tarala's dismissal of his conditions and refusal to send him for additional testing or treatment.  *See id*. at 2.

The Commissioner argues that the ALJ's determination was supported by substantial evidence and should be affirmed.  *See generally* Dkt. No. 15.  The Commissioner argues that plaintiff's complaints of a traumatic brain injury, CSF pressure, spinal injuries, PMF, and long COVID do not constitute severe impairments within the meaning of the applicable regulations because he has not been diagnosed with these conditions and there is no objective evidence documenting the same.  *See* Dkt. No. 15 at 10-11 (citing 20 C.F.R. § 404.1521).  The Commissioner also argues that the ALJ's RFC determination is supported by substantial evidence because "the ALJ properly evaluated the medical opinions of record and articulated her findings concerning the persuasiveness of each opinion pursuant to 20 C.F.R. § 404.1520c.  Plaintiff failed to show, as was his burden, that he had a more restrictive RFC than the ALJ assessed."  *Id*. at 13 (additional citation omitted).  The Commissioner claims that "[o]bjective findings showed that Plaintiff

had normal neurological findings, full muscle strength throughout the extremities, intact sensation, normal gait" and the medical opinions proffered by Dr. Figueroa, Dr. Vinlaun, Dr. Periakarrupan, Dr. Shapiro, Dr. Li, and Dr. Kamin support the ALJ's RFC determination.  *See id* at 13-15.  The Commissioner contends that the ALJ "afforded Plaintiff the benefit of the doubt when she incorporated greater standing and walking physical limitations than those found by Dr. Figueroa."  *Id*. at 14 (citing T. at 29). Additionally, the Commissioner states that plaintiff's activities of daily living ("ADL") support the ALJ's RFC determination and plaintiff's complaints of pain were inconsistent with the record.  *See id*. at 15-16.  In sum, the Commissioner argues that plaintiff's contentions regarding the ALJ's RFC determination constitute a disagreement with the weight of the evidence and there are jobs that plaintiff could perform in the national economy given his physical and mental limitations.  *See id*. at 16-18.

## B. **Severe Impairments**

"At the second step of the evaluation, the medical severity of a claimant's impairments is considered."  *Richard H. v. Comm'r of Soc. Sec.*, No. 5:17-CV-0515 (DNH/TWD), 2018 WL 4627118, at *4 (N.D.N.Y. Aug. 15, 2018), *report and recommendation adopted,* No. 5:17-CV-0515 (DNH/TWD), 2018 WL 4625402 (N.D.N.Y. Sept. 26, 2018) (citing 20 C.F.R. § 404.1520(a)(4)(ii)).  A claimant's impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.  A claimant's own "statement of

9

symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)" is not sufficient. *Id.*

"A 'severe impairment' is defined as any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Richard H.*, 2018 WL 4627118, at *4. (citing 20 C.F.R. §§ 404.1520(c); 404.1521) (internal quotation marks omitted). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). Basic work activities include

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* § 404.1522(b)(1)-(6). The claimant is responsible for submitting evidence establishing the severity of their disability. *See id.* § 404.1512(a)(2)(i).

Here, the ALJ determined that plaintiff had severe impairments consisting of MS, PSTD, GAD, and alcohol use disorder. *See* T. at 20 (*See* Dkt. No. 12-2). The ALJ explained that

> [n]o other medical disorder mentioned in the record, whether considered singly or combined with any other medically determinable impairment, has been established as a "severe" impairment that meets the 12-month duration requirement. For example, the claimant has a history of degenerative changes to his cervical spine (Exhibit 13F, page 2) and a tiny thoracic cord syrinx (Exhibit 13F, page 3). However, the evidence does not support a finding that these impairments, singly or in combination, limit the claimant's ability to function in any significant way.

*Id.* (*See* Dkt. No. 12-2).

10

Plaintiff asserts that he suffers from a traumatic brain injury, CSF pressure, traumatic spinal injuries, traumatic spinal injuries, PMF, meningitis, and long COVID, and that these conditions constitute severe impairments. *See* Dkt. No. 7 at 4-5. Yet, plaintiff has not demonstrated that he has been diagnosed with any of these conditions. Plaintiff refers to various medical records by year or a period of years, but he does not state when and by whom he was diagnosed with these conditions. *See generally* Dkt. No. 7. Rather, he repeats that his treatment providers disagreed with his self-reports, failed to properly consider and analyze his symptoms, and refused to send him to the correct specialists or for additional treatment. *See id*. at 3-4, 6.

Plaintiff claims that a 2022 MRI of his brain shows CSF pressure. *See* Dkt. No. 7 at 4. However, the MRI reports specifically state, "[n]o acute or subacute ischemia, enhancing intracranial mass, signs of hemorrhage or hydrocephalus." T. at 309, 358, 406-07 (*See* Dkt. No. 12-7). Plaintiff also references MRIs and X-ray's taken between 2018 and 2024 that show a "broken spine." *See* Dkt. No. 7 at 5. Yet, MRI records of plaintiff's cervical and thoracic spine from March 2022 indicate that plaintiff had a "[n]ormal spinal cord without demyelination" and "no abnormal enhancement of the vertebral bodies, disc spaces, or spinal cord." T. at 389-91 (*See* Dkt. No. 12-7). The records indicate that the March 2022 examination results were compared to plaintiff's examination results from 2018. *See* T. at 389, 391. (*See* Dkt. No. 12-7). Other than his subjective complaints and self-reports, plaintiff has proffered no evidence that he suffers from any additional severe impairment. *See* 20 C.F.R. § 404.1521; *Castillo v. O'Malley*, No. 24-41-CV, 2024 WL 4707253, at *3 (2d Cir. Nov. 7, 2024) (quoting *Genier v. Astrue*, 606 F.3d

11

46, 49 (2d Cir. 2010) ("[A]n ALJ is 'not required to accept the claimant's subjective complaints without question.'").

The undersigned is sympathetic to plaintiff's various conditions and pain; however, plaintiff has failed to meet his burden that he suffers from a severe impairment other than those listed by the ALJ.   *See* 20 C.F.R. §§ 404.1521; 404.1522(b); 404.1512(a)(2)(i); *Richard H.*, at *4 (citing 20 C.F.R. § 404.1520(a)(4)(ii)).

## C.  **RFC Determination**

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms."   *Joseph J. B.*, at *8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945))).   "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ."   *Id*. (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2))).   "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient."   *Id*. (quoting *Martone*, 70 F. Supp. 2d at 150 (citations omitted)).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources."   *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)).   "[T]he ALJ's conclusion [need] not perfectly correspond

with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.* (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]'" *Id*. (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (internal citation omitted)). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted). "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, but [t]he Court will not reweigh the evidence that was before the ALJ." *Id*. (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted)).

### 1. **Plaintiff's Claimed Limitations**

As discussed above, the ALJ concluded that plaintiff had the RFC to perform sedentary work with several restrictions. *See supra* at 6; *see also* T. at 22 (Dkt. No. 12-2). Affording plaintiff due solicitude, he argues the RFC determination is not supported by substantial evidence because he cannot perform any of the physical or mental tasks listed by the ALJ when describing sedentary work. *See* Dkt. No. 7 at 7-8. More specifically, plaintiff claims that his (1) physical impairments affect his "limbs" and his

13

"ability to stand, walk, sit, reach, [and] lift anything"; and (2) mental impairments affect his ability to concentrate and think. *Id*. at 7.  He claims that he cannot "engage in physical or social activities due to lower and upper spine pain[]," and because he has lost the use of his arms and legs. *Id*.  Plaintiff claims that his limbs are "going paralyzed" and he has "no pivot point."  *Id*.  Plaintiff also states that he suffers from "brain pains . . . loss of limb function, stabbing nerve pains, [and] organ pains" that substantially limit all his life activities.  Dkt. No. 7 at 7.  Plaintiff claims that he "can't put any pressure on [his] left leg without nauseating nerve pains into [his] lower spine[,] hips, organs, and down [his] legs"; "can't even open [or] close doors or reaching into cupboards without extreme nauseating nerve and organ pains"; and that pain causes him to feel paralyzed, such that he has to lay down.  *Id*.  It appears that plaintiff is arguing that the ALJ failed to consider these symptoms and limitations.

Yet, the ALJ's decision considered many of the symptoms and limitations plaintiff describes in his brief.  The ALJ noted that

> [t]he claimant states that he is disabled due to physical and mental impairments including, multiple sclerosis, sciatica, and posttraumatic stress disorder (Exhibits 1E, 14E, and 8F).  He states that his symptoms include widespread pain including, brain pain, upper and lower spine pain, and lower extremity pain; numbness in his left upper extremity and lower extremities; inflammation that circulates throughout his body; skin rashes and hives resulting in skin lesions; and anxiety (Exhibit 1E, page 2; Exhibit 4E, pages 1-4; and Exhibit 14E, page 1).  He states that he first began having an odd feeling in the back of his head as well as cognitive issues during the later half of 2017 after undergoing hand surgery and taking nearly five hours to wake from anesthesia (Exhibit 8F, page 1).

T. at 23 (*See* Dkt. No. 12-2).  The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting

14

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* (*See* Dkt. No. 12-2).  The ALJ then provided a thorough discussion of the medical evidence and medical opinions of record, explaining why this evidence supported her conclusion.  *See id.* at 23-32 (*See* Dkt. No. 12-2).

Additionally, as the Commissioner correctly argues, the objective medical evidence of record contradicts plaintiff's claims and supports the ALJ's determination that plaintiff could perform a restrictive range of sedentary work.  *See* Dkt. No. 15 at 13.  Plaintiff's treatment records indicate that he had "normal neurological findings, full muscle strength throughout [his] extremities, intact sensation, and normal gait."  *Id.* (citing T. at 302, 305, 344, 361-62, 384, 393, 396, 401-02, 404, 411-12, 440, 445-46, 625, 709-10, 774-75, 782-83, 883, 894-95) (*See* Dkt. Nos. 12-7, 12-8).  These treatment records also indicate that plaintiff's exercise regimen included lifting weights five times per week.  *See* T. at 344, 361, 709, 782.

Plaintiff does not cite any objective medical evidence to support any of the assertions raised in his brief.  Plaintiff's only basis for these claims is his own subjective statements.  *See Vincent E.V. v. Comm'r of Soc. Sec.*, No. 1:23-CV-2758 (GRJ), 2024 WL 898670, at *7 (S.D.N.Y. Mar. 1, 2024) (citing *Kuchenmeister v. Berryhill*, No. 16 Civ. 7975, 2018 WL 526547, at *19, 2018 U.S. Dist. LEXIS 9750, at *59 (S.D.N.Y. Jan. 19, 2018)) ("An ALJ has the discretion to discount a claimant's subjective complaints where, as here, those complaints can be considered inconsistent with the overall clinical assessments and treatment notes.").  "[P]laintiff's argument[] amount[s] to a disagreement with how the ALJ weighed the evidence, which is within [the ALJ's] province to do."

15

*Joseph J. B.*, 2024 WL 4217371, at *1 (quoting *Nichole K. v. Comm'r of Soc. Sec.*, No. 1:23-CV-858 (EAW), 2024 WL 3022592, at *7 (W.D.N.Y. June 17, 2024)) (internal quotation marks omitted); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *Tina W. v. Comm'r of Soc. Sec.*, No. 5:22-CV-15 (MAD), 2023 WL 157952, at *7 (N.D.N.Y. Jan. 10, 2023) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("It is not the Court's function to reweigh the evidence on appeal, only to 'decide whether substantial evidence supports the ALJ's decision.'")).

Therefore, the undersigned concludes that the ALJ considered plaintiff's subjective reports of his symptoms and limitations and provided a thorough explanation supporting her treatment of plaintiff's self-reports.  Accordingly, plaintiff's argument lacks force.

### 2.  Medical Opinions

"For claims filed on or after March 27, 2017," an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources."  20 C.F.R. § 416.920c(a) (internal citation omitted).  Rather medical opinions and PAMFs are evaluated based on their "persuasiveness."  *Id.*  In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors:  (1) supportability;  (2) consistency;  (3) relationship with the claimant;  (4) specialization; and (5) "other factors."  *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5).  "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'"  *Brian K.*

*v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" analysis, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'"). With regard to the "consistency" analysis, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted."  *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted).  "However, they must articulate how persuasive they found the medical opinions and PAMFs."  *Id*. (citing 20 C.F.R. § 416.920c(b)).  "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'"  *Id*. (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.")

Reading plaintiff's brief liberally and affording him due solicitude, plaintiff seems to argue that the state medical consultative examiners' opinions in Exhibits 10F and 11F most accurately describe his symptoms and limitations and the ALJ "failed to properly incorporate [the] restrictions reported" by the consultative medical experts when reaching her RFC determination.[8]  Dkt. No. 7 at 4-5.

---

[8] The undersigned notes that plaintiff also argues, contradictorily, that none of the state medical consultative examiners correctly evaluated his symptoms and limitations.  *See* Dkt. No. 7 at 3, 10.

a. **Jeanne Shapiro, Ph.D.**

Exhibit 10F is a psychiatric evaluation report from state medical consultative examiner Jeanne Shapiro, Ph.D., dated August 23, 2022. *See* T. at 613-17 (*See* Dkt. No. 12-7). Dr. Shapiro opined that plaintiff

> does not appear to have any limitations understanding, remembering, or applying simple or complex instructions and directions or using reason and judgment to make work-related decisions. Moderate limitations interacting adequately with supervisors, coworkers, and the public. Moderate limitations sustaining concentration and performing a task at a consistent pace. Moderate limitations sustaining an ordinary routine and regular attendance at work. Marked limitations regulating emotions, controlling behavior, and maintaining well being. Moderate limitations consistently maintaining personal hygiene and appropriate attire. No limitations in being aware of normal hazards and taking appropriate precautions. Difficulties are caused by psychiatric problems.
>
> The results of the examination appear to be consistent with psychiatric problems and this may significantly interfere with his ability to function on a daily basis.

T. at 616 (*See* Dkt. No. 12-7).

The ALJ concluded that Dr. Shapiro's opinion was "of some persuasive value." T. at 29 (*See* Dkt. No. 12-2). The ALJ explained that Dr. Shapiro's opinion was supported by her "detailed examination" of plaintiff. *Id*. (*See* Dkt. No. 12-2). The ALJ further explained:

> [w]hile Dr. Shapiro's general finding that the claimant has more than minimal mental limitations is very generally consistent with the claimant's history of mental impairments and CPEP visit, her specific findings are less consistent with the other evidence of record. For example, her conclusion that the claimant has marked limitations in regulating emotions, controlling behavior, and maintaining well being is inconsistent with the claimant's lack of psychiatric abnormalities during most examinations and lack of sustained mental health treatment since his alleged onset date.

*Id*. at 30 (*See* Dkt. No. 12-2).

Although plaintiff does not use the words "supportability" and "consistency" in his motion, plaintiff appears to argue that Dr. Shapiro's opinion is consistent with the evidence of record, and the ALJ's treatment of Dr. Shapiro's opinion is erroneous.  *See* Dkt. No. 7 at 4.  However, the evidence of record supports the ALJ's consistency conclusion that plaintiff's mental health examinations were generally normal, and plaintiff's reports to Dr. Shapiro differ from what he told other treatment providers before and after Dr. Shapiro's examination.  *See* T. at 301, 305, 344, 362, 404, 433, 440, 633, 774, 883.  Therefore, the undersigned concludes that substantial evidence supports the ALJ's treatment of Dr. Shapiro's opinion.  *See* 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G.*, 2021 WL 5232722, at *4).

### b.  **Rita Figueroa, M.D.**

Exhibit 11F is a neurological evaluation report from state medical consultative examiner Rita Figueroa, M.D., dated August 23, 2022.  *See* T. at 619-22 (*See* Dkt. No. 12-7).  Dr. Figueroa opined that plaintiff had "moderate to severe limitations for repetitive bending, lifting, and carrying."  *Id*. at 621 (*See* Dkt. No. 12-7).  The ALJ concluded that Dr. Figueroa's opinion was "generally persuasive."  *Id*. at 29 (*See* Dkt. No. 12-2).  The ALJ noted that Dr. Figueroa's "examination was remarkable for the following abnormalities: a stiff unaided gait, an inability to walk on his heels due to a self-reported toe injury, reduced range of motion of the lumbar spine, fine tremors in the right hand, and an inability to 'sense the two-point discrimination' in any extremity."  *Id*. (citing T. at 620-21) (*See* Dkt. Nos. 12-2, 12-7).  The ALJ concluded that Dr. Figueroa's opinion was supported by "a detailed examination" of plaintiff and

generally consistent with the claimant's above[-]discussed treatment records, including his diagnostic testing and history of multiple sclerosis. However, I find that the claimant's treatment records and the opinions of the State agency medical consultants (Exhibits 2A and 4A) do suggest that the claimant has greater standing and walking limitations and additional postural limitations than those outlined by Dr. Figueroa.

*Id.* (*See* Dkt. No. 12-2).

Affording plaintiff solicitude due to his pro se status, he argues that the ALJ's treatment of Dr. Figueroa's opinion is not supported by the substantial evidence because the ALJ "failed to incorporate [the] restrictions" reported by Dr. Figueroa. Dkt. No. 7 at 4. However, it is unclear to what restrictions plaintiff is referring or how the ALJ otherwise erred in her treatment of Dr. Figueroa's opinion. The ALJ determined Dr. Figueroa's opinion was generally persuasive and adopted most of Dr. Figueroa's opinion. *See* T. at 29 (*See* Dkt. No. 12-2). The ALJ found one part of Dr. Figueroa's opinion to be less persuasive – the limitations for standing and walking. *See id.* Instead, the ALJ adopted "the opinions of the State agency medical consultants (Exhibits 2A and 4A)" to conclude that plaintiff had greater standing and walking limitations than those proffered by Dr. Figueroa's opinion.[9] *Id.* The ALJ only deviated from Dr. Figueroa's opinion to apply more restrictive standing and walking limitations, and the ALJ cited the PAMFs in support of this deviation. *See* T. at 80, 92 (*See* Dkt. No. 12-3).

---

[9] Exhibit 2A contains a medical opinion from A. Vinlaun, M.D., dated September 13, 2022. *See* T. at 68-86 (*See* Dkt. No. 12-3). Exhibit 4A contains a medical opinion from A. Periakaruppan, M.D. *See* T. at 88-95 (*See* Dkt. No. 12-3). Dr. Vinlaun and Dr. Periakaruppan opined that plaintiff's "gait is stiff" and he is "unable to heel toe walk." *Id.* at 80, 92 (*See* Dkt. No. 12-3). The ALJ determined that Dr. Vinlaun and Dr. Periakaruppan's opinions were supported by a detailed narrative and explanation, and their opinions were consistent with the other evidence of record. *See id.* at 30-31 (*See* Dkt. No. 12-2). Plaintiff generally claims that neither Dr. Vinlaun or Dr. Periakaruppan "thoroughly evaluated his medical symptoms," yet both Dr. Vinlaun and Dr. Periakaruppan's opinions contain a detailed list of the medical evidence they considered in forming their respective opinions. Dkt. No. 7 at 6; *see* T. at 70-72, 89.

Accordingly, the undersigned concludes that the ALJ's treatment of Dr. Figueroa's opinion is supported by substantial evidence. *See* 20 C.F.R. § 416.920c(c)(1); *Kathleen A.*, 2022 WL 673824, at *4 (quoting *Carmen M.*, 2021 WL 5410550, at *4).

### c. **James Tarala, M.D.**

Dr. Tarala is one of plaintiff's treating providers. He submitted a partially-completed physical impairment questionnaire on plaintiff's behalf dated August 6, 2023. *See* T. at 721-27 (*See* Dkt. No. 12-8). The ALJ noted that "Dr. Tarala specifically described his treatment of the claimant as well as the claimant's signs, symptoms, and diagnoses (Exhibit 16F, pages 72-78). Dr. Tarala did not outline what the claimant's functional abilities were." *Id.* at 31 (*See* Dkt. No. 12-2). The ALJ listed Dr. Tarala's notation that "[t]his questionnaire cannot be accurately completed given that we don't treat his [the claimant's] MS and do [sic] to inconsistent follow up on the behalf of the patient with neurology and due to non-compliance with treatment recommendations from the few different neurologists he has seen." *Id*. (*See* Dkt. No. 12-2). The ALJ stated that she "considered Dr. Tarala's statement as part of [her] overall review of the record" but concluded that "Dr. Tarala [did] not provide[] any opinion regarding the claimant's functional abilities for [her] to assess." *Id*. (*See* Dkt. No. 12-2).

Plaintiff argues that Dr. Tarala dismissed his concerns regarding CSF pressure and other injuries and refused to examine his conditions beyond ordering an X-ray. *See* Dkt. No. 7 at 2. Plaintiff's argument amounts to a disagreement with the medical treatment and course of treatment that he received from Dr. Tarala. Plaintiff's argument does not dispute the ALJ's review of Dr. Tarala's partial physical impairment questionnaire or the ALJ's decision not to consider Dr. Tarala's questionnaire in formulating her RFC

22

determination.  *See id*.  Therefore, the undersigned concludes that it is not necessary to evaluate Dr. Tarala's opinion further.[10]

### D. **Duty to Develop the Record**

"'Whether the ALJ has met his duty to develop the record is a threshold question' that the Court must determine '[b]efore reviewing whether the Commissioner's final decision is supported by substantial evidence[.]'"  *Joseph J. B.*, 2024 WL 4217371, at *4 (quoting *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016)).  "While the ALJ has an affirmative obligation to develop the administrative record, her duty to do so is not without limit."  *Gillard v. Colvin*, 5:11-CV-1173 (GLS), 2013 WL 954909, at *2 (N.D.N.Y. Mar. 12, 2013) (citation omitted).  "Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make her determination based upon that evidence."  *Id*. (citing 20 C.F.R. § 404.1520b(a)).  "Consistent with that notion, where there are no 'obvious gaps' in the record, the ALJ is not required to seek additional information."  *Id*. (quoting *Rosa v. Callahan,* 168 F.3d 72, 79 n.5 (2d Cir. 1999)); *see also Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 537-38 (S.D.N.Y. 2015) (first citing *Rosa*, 168 F.3d at 79 n.5 (2d Cir. 1999), then citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).  "The ultimate question is whether the administrative record is 'robust enough to enable a meaningful assessment of the particular conditions on which the [plaintiff] claims

---

[10] Plaintiff alleges that Drs. Shapiro and Figueroa are the only doctors to thoroughly evaluate his symptoms and impairments, and all of his other medical providers failed to do so.  *See* Dkt. No. 7 at 5-6.  The administrative transcript contains treatment records and medical opinions from several of plaintiff's other medical providers.  Yet, plaintiff does not state which doctor(s) he believes failed to correctly evaluate him, or how any of these doctors failed to properly consider his symptoms and impairments.  Without this additional information, judicial review is frustrated because the undersigned is unable to determine the part(s) of the ALJ's decision of which plaintiff is seeking review.  As such, this conclusory, undeveloped, and unsupported argument is without force and fails to serve as a basis to remand.

disability.'" *Joseph J. B.*, 2024 WL 4217371, at *4 (quoting *Sanchez v. Colvin*, No. 13-CV-6303 (PAE), 2015 WL 736102, at *7 (S.D.N.Y. Feb. 20, 2015) (additional citations omitted)). "The ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment." *Michael D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-104 (CFH), 2023 WL 3601718, at *3 (N.D.N.Y. May 23, 2023) (quoting *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704 (JPO), 2015 WL 321832, at *22 (S.D.N.Y. Jan. 23, 2015) (additional citations omitted)).

Plaintiff argues that he believed the state medical consultative examiners "would help obtain medical evidence related to [his] claim that would be necessary for [the ALJ] to review." Dkt. No. 7 at 4. Plaintiff also claims that there is "missing medical evidence" from the record, and he has "more medical information to share." *Id*. at 7, 10. Affording plaintiff due solicitude, it appears that plaintiff is arguing that a gap exists in the record, and the ALJ failed to fully develop the record.

A gap in the record exists when there is incomplete or missing evidence that prevents the ALJ from rendering an RFC determination supported by substantial evidence, in turn, triggering the ALJ's duty to develop the record further. *See Joseph J. B.*, 2024 WL 4217371, at *6 (citing *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) (summary order) (citation omitted) ("[T]he agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record.")); *Gillard*, 2013 WL 954909, at *2 (citation omitted) ("[B]ecause the record was sufficiently robust for the ALJ to make a disability determination, she was not obligated to further develop the record[.]").

Here, plaintiff has not demonstrated that the administrative transcript is missing any evidence or that he is prejudiced by the ALJ's failure to obtain additional evidence. *See Joseph J. B.*, 2024 WL 4217371, at \*7 (quoting *Lucius R. v. O'Malley*, No. 3:22-CV-1312 (MPS), 2024 WL 1200181, at \*15 (D. Conn. Jan. 22, 2024) ("Plaintiff has not met his burden to show that he was prejudiced by the absence of [any] allegedly missing records."); *Tavarez v. Astrue*, No. 11-CV-2784 (FB), 2012 WL 2860797, at \*3 (E.D.N.Y. July 11, 2012) ("The claimant also bears the burden, when contending that the ALJ failed to develop the record, to show that the missing evidence was significant and harmful to her claim.") (citations omitted).   Plaintiff claims that there is medical evidence missing from the record and he has additional medical evidence that would ultimately help prove his claims.   *See* Dkt. No. 7 at 4, 7, 10.   Yet, plaintiff does not allege (1) what medical evidence is he believes to be missing, (2) the name of the doctor or treatment provider who generated the allegedly-missing medical records, or (3) when the missing or additional records were generated.    Further, plaintiff has not alleged how this missing or additional evidence will aid in substantiating any of his claims.   The undersigned has reviewed the record, concludes that there is not an obvious gap in the record, and the ALJ's duty to develop the record further was not triggered.   *See Joseph J. B.*, 2024 WL 4217371, at \*6 (citing *Eusepi*, 595 F. App'x at 9).   Accordingly, this argument lacks merit.

Therefore, the undersigned recommends that plaintiff's cross-motion be denied, the Commissioner's cross-motion be granted, and the ALJ's decision affirmed because substantial evidence supports the ALJ's decision.   *See Joseph J. B.*, 2024 WL 4217371, at \*1; *Melissa W.*, 2025 WL 1929917, at \*9; 20 C.F.R. §§ 416.920c(c)(1)-(2).

### E.  **H. Morris Glass**

Although not addressed by the Commissioner, plaintiff's complaint also seeks proceed against H. Morris Glass ("Glass").  *See generally* Dkt. No. 1.  Glass appears to be the SSA Appeals Officer who notified plaintiff of the October 21, 2024, Appeals Council decision.  *See* Dkt. No. 1-1 at 3.  However, as the only proper defendant is the Commissioner of Social Security, plaintiff cannot proceed against Glass.  *See Byng v. Soc. Sec. Admin. - Utica, N.Y. Field Off.*, No. 6:25-CV-0377 (DNH/PJE), 2025 WL 3541472, at *10 (N.D.N.Y. Nov. 17, 2025), *report and recommendation adopted sub nom. Byng v. Soc. Sec. Admin.*, No. 6:25-CV-377, 2025 WL 3540319 (N.D.N.Y. Dec. 10, 2025) (citing 42 U.S.C. § 405(g)); *Keesing v. Apfel*, 124 F. Supp. 2d 134, 135 (N.D.N.Y. 2000) ("The only proper defendant in an action under section 405(g) is the Commissioner of Social Security."); *Maloney v. Soc. Sec. Admin.*, No. 02-CV-1725 (JFB/SMG), 2006 WL 1720399, at *5, n.8 (E.D.N.Y. June 19, 2006), *aff'd,* 517 F.3d 70 (2d Cir. 2008) ("[T]he only proper party for any benefit claims review by the district court pursuant to 405(g) is the Commissioner."); *Smith v. Comm'r of Soc. Sec.*, No. 20-CV-1384 (MKB), 2020 WL 2744132, at *2 (E.D.N.Y. May 26, 2020) (citing *Langella v. Bush*, No. 03-CV-5114, 2004 WL 2668400, at *4 (S.D.N.Y. Nov. 22, 2004)) ("The only proper defendant in a challenge to a decision by the Social Security Administration is the Commissioner of Social Security.").  Therefore, the undersigned recommends that plaintiff's claims, as raised against Glass, be dismissed without prejudice and without opportunity to amend.  *See id*. at *15.

## V. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that plaintiff's cross-motion (Dkt. No. 7) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's cross-motion (Dkt. No. 15) be **GRANTED**, and the Commissioner's decision be affirmed; and it is further

**RECOMMENDED**, that insofar as plaintiff seeks to proceed against Glass, such claims be **DISMISSED without prejudice and without opportunity to amend**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to U.S.C. §636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED. R. CIV P. 6(a), 6(e), 72.[11]

Dated:  February 25, 2026
     Albany, New York

_____
Paul J. Evangelista
U.S. Magistrate Judge

---

[11] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  *See* FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal federal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal federal holiday.  *See id.* § 6(a)(1)(c).